FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN -1  A 10: 59

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DARNELL LEWIS** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 04-2177** |
| **BURL CAIN, WARDEN** | * | **SECTION: "S"(6)** |

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose

of conducting a hearing, including an evidentiary hearing, if necessary, and submission of

proposed findings and recommendations for disposition pursuant to Title 28, United States

Code, Sections 636(b)(1)(B) and (C), and, as applicable, Rule 8(b) of the Rules Governing

Section 2254 cases. Upon review of the entire record, the Court has determined that this

matter can be disposed of without an evidentiary hearing. For the reasons set forth below,

it is recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

### Introduction

Petitioner, Darnell Lewis, is a state prisoner presently incarcerated in the

Louisiana State Penitentiary, Angola, Louisiana, as a result of his convictions of armed

robbery, attempted second degree murder and adjudication as a second felony offender. He

___ Fee_____
___ Process_____
X  Dktd_____
✓  CtRmDep_____
___ Doc. No._____

is serving concurrent sentences of 160 years and 50 years. Lewis filed his original and amended applications for habeas corpus relief on July 6, 2004, as the filing of the amended application relates back to the filing date of the original application. The July 6, 2004, filing date is the date petitioner signed the declaration of his application under the federal mail box rule.[1]

Petitioner brought the first three claims in his original application and the fourth claim in his amended application as follows:

(1) The State court denied the petitioner a full and fair evidentiary hearing on the substance of his claims and he is therefore entitled to an evidentiary hearing on the claims presented in his petition for federal habeas corpus relief;

(2) The State knowingly used perjured testimony to obtain petitioner's conviction;

(3) The petitioner was denied effective assistance of counsel in that,

    a. counsel failed to call alibi witnesses;

    b. counsel filed to locate and call Michelle Brown as a witness;

---

[1] Under the "mailbox rule" employed by this Court, a pleading filed by a prisoner acting pro se is considered to be filed, for prescriptive purposes, on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. **Cooper v. Brookshire**, 70 F.3d 377, 379 (5th Cir. 1995). If no evidence exists as to the date the petition was delivered to prison officials, the date the petitioner signed his habeas application is considered to be the filing date for purposes of determining the timeliness of the matter. *See* **Colarte v. LeBlanc**, 40 F.Supp.2d 816, 817 (E.D. La. 1999); **Magee v. Cain**, 2000 WL 1023423, *4 n.2 (E.D. La. 2000); **Punch v. State**, 1999 WL 56279, *2 n.3 (E.D. La. 1999).

c. counsel failed to call Officer James Neyrey as a witness;

d. counsel failed to move for a continuance of trial to investigate the State's surprise witness, Aaron Fisher; and,

(4) Insufficient evidence regarding petitioner's identity and suggestive identification procedures resulting in petitioner's misidentification.

Respondent does not contest the timeliness of the federal applications. Respondent does however, contest petitioner's representation that he has properly exhausted his state court remedies. See **Rose v. Lundy**, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.29 379 (1982); **Dupuy v. Butler**, 837 F.2d 699, 702 (5th Cir. 1988). Specifically, Respondent argues that the fourth claim (sufficiency of evidence and misidentification, etc.) has not been exhausted in the State's highest court. Despite the above conflict, the Court has nevertheless examined the merits of the instant petition and finds that petitioner's application for federal habeas corpus relief should be **DENIED**.[2]

## Procedural History

In the original and amended habeas petition, Darnell Lewis seeks relief from his August 10, 1998, state court convictions of armed robbery and attempted second degree murder, violations of La. R.S. 14:64 and La. R.S. 14:(27) 30.1, his subsequent adjudication

---

[2]Title 28, United States Code, Section 2254(b)(2) provides that '[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the Courts of the State.

as a second felony offender and his September 25, 1998, sentence of 160 years on the armed robbery, without benefit of parole, probation or suspension of sentence and 50 years on the attempted second degree murder.[3]

On January 11, 2000, petitioner directly appealed his case to the Louisiana Court of Appeal, Fourth Circuit, presenting the following issues:  (1) insufficient evidence to prove the charged crimes; (2) double jeopardy; and, (3) insufficient evidence to support the multiple offender adjudication.[4]  On October 4, 2000, the Fourth Circuit affirmed petitioner's convictions and sentences.[5]

---

[3]See State Record, Vol. 1 of 6, **State v. Darnell Lewis**, No. 392-718, Orleans Parish Criminal District Court, State of Louisiana, Docket Master, Minute Entries dated 8/10/98, 9/18/98 and 9/25/98.

[4]See State Record, Vol. 4 of 6, Original Brief of Defendant-Appellant, No. 99-KA-2891, pages 4 and 5 assignment of errors.

[5]**State v. Darnell Lewis**, No. 99-KA-2891, (La. App. 4th Cir. Oct. 4, 2000) unpublished opinion, 771 So.2d 330 (Table).  A copy of the unpublished opinion is contained in the State Record, Vol. 1 of 6.

On December 19, 2000,[6] (post mark date), petitioner sought a writ of certiorari and/or review in the Louisiana Supreme Court on the same issues presented to the Fourth Circuit.[7]  The Louisiana Supreme Court denied the writ on November 21, 2001.[8]

Petitioner claims that he filed his first application for post conviction relief (PCR) in the state district court on January 3, 2002.  Petitioner's motion to supplement the record with a copy of the PCR was granted by this Court.  The claims raised were:  (1) defense counsel rendered ineffective assistance prior to, during and after trial; (2) petitioner's sentence is constitutionally excessive; (3) petitioner was denied his constitutional right to due process of law where his in-court identification was impermissible and suggestive; (4) the knowing use of perjured testimony by the state violated petitioner's constitutional rights to equal protection and due process of law; and, (5) trial court's failure in allowing the defense to prepare for the state's surprise witness violated petitioner's constitutional rights to equal protection, due process and a fundamentally fair trial.  The record contains an amended

---

[6]See State Record, Vol. 4 of 6, Letter from Clerk of the Louisiana Supreme Court dated January 11, 2001, acknowledging receipt of pleading and filing, **State v. Lewis**, No. 2001-KO-102.

[7]See State Record, Vol. 6 of 6, Supplemental Pro Se Writ of Certiorari, No. 2001-KO-102.  Issues are on page 1.

[8]See State Record, Vol. 1 of 6, and Vol. 4 of 6, for copy of ruling.  **State v. Lewis**, No. 2001-KO-0102 (La. Nov. 21, 2001).

application for post conviction relief filed on May 26, 2002.[9]  The issues presented were:

(1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and,

(3) petitioner's arrest violated the 4th and 14th Amendments.  The court denied relief on

December 5, 2002.[10]

Petitioner filed for review in the Louisiana Court of Appeal, Fourth Circuit on

January 14, 2003.  The following issues were raised:

1.      Defense counsel rendered ineffective assistance prior to,
during, and after trial proceedings;

2.      Petitioner's sentence is constitutionally excessive;

3.      Petitioner was denied his constitutional right to due process of
law where his in-court identification was impermissible and
suggestive;

4.      The knowing use of perjured testimony by the state violated
petitioner's constitutional rights to equal protection and due
process of law;

5.      The trial court's failure to allow the defense to prepare for the
state's surprise witness violated petitioner's constitutional right
to equal protection and due process and a fundamentally fair
trial;

6.      Petitioner's arrest violated his constitutional rights under the
Fourth and Fourteenth Amendments;

---

[9]See State Record, Vol. 1 of 6, for copy of amended application for post conviction relief.

[10]See State Record, Vol. 2 of 6, for a copy of the December 5, 2002, Judgment.

7.      Petitioner's conviction was obtained in violation of his due process and equal protection rights, when in fact petitioner is actually innocent;

8.      Petitioner was denied of his fundamental rights to due process and the equal protection of the law when inadmissible evidence was proffered during the trial that did not meet the chain of custody requirements;

9.      Petitioner's constitutional rights were violated when inconsistent statements and testimonies from state witnesses confused and misled the jurors, distorted the facts, and rendered petitioner's trial unfair.[11]

The Fourth Circuit denied the writ application on February 14, 2003.[12]  The court said:

"This Court has reviewed the relator's application for post conviction relief and finds no error in the trial court's judgment."

Petitioner filed his second application for PCR in the state district court on June 12, 2003, therein alleging a claim that he was denied due process when the state suppressed evidence that was favorable to his defense.[13]  The district court denied relief on June 19, 2003, via Judgment which states, in pertinent part:

---

[11]See State Record, Vol. 5 of 6, for copy of application for writs.  **State v. Lewis**, No. 2003-K-0095, January 14, 2003.

[12]See State Record, Vol. 5 of 6, for copy of ruling.  **State v. Lewis**, No. 2003-K-0095, Feb. 14, 2003.  It should also be noted that the Louisiana Supreme Court referenced the Fourth Circuit's No. 2003-K-0095 when it denied writs in **State ex rel. Darnell Lewis v. State of Louisiana**, 874 So.2d 161 (La. 5/21/04) No. 2003-0874.

[13]See State Record, Vol. 2 of 6, Petition for Post Conviction Relief, filed June 12, 2003.

"According to defendant's petition, Michelle Brown was residing in New Orleans until October 2001, and thus was present in the State at the time of trial, as well as 3 years after trial. The existence of Michelle Brown is not newly discovered evidence. La. C.Cr. P. art. 854.

Based on the foregoing, defendant's Petition for Post Conviction Relief is hereby DENIED."[14]

On July 22, 2003, petitioner filed an application for supervisory writs in the Louisiana Court of Appeal, Fourth Circuit setting forth the following issues:

1.  Whether the trial court erred in failing to grant an evidentiary hearing to present new and material evidence of an eyewitness who was unavailable at time of trial, who would impeach the testimony of prosecution's witnesses, and who will testify that the defendant was not the perpetrator.

2.  Whether the petitioner is entitled to an evidentiary hearing for the purpose of presenting new and material evidence which would establish his actual innocent under the res nova ruling set forth in **State v. Conway**, 2001-2808 (La. 4/12/02), 816 So.2d 290.

3.  Whether the petitioner is entitled to DNA testing of a blue bandana that the victim allegedly snatched off the assailant's head, where DNA findings of hair fibers and/or skin specimen in the bandana would prove that petitioner was not the perpetrator.

4.  Whether the instant conviction was the product of false and fabricated evidence when considered in light of the new evidence that was not presented to the jury.

---

[14]See State Record, Vol. 1 of 6, Judgment dated June 19, 2003.

5.      Whether the district court judge, who was the First Assistant
        District Attorney at the time of pretrial and trial, should have
        recused herself in the instant post conviction proceeding in
        which the claims involve prosecutor misconduct under her
        previous administration and, thus, gives an appearance of bias.[15]

The Fourth Circuit denied the application for supervisory writs on August 26, 2003, therein

stating:

> Relator's claims in his application for post conviction relief
> have been reviewed.  We find no error in the district courts 19
> June 2003 ruling denying relief to relator.  Relator has failed to
> demonstrate or show in his application that relief should be
> granted.  See, e.g. La. C.Cr. P. arts. 930.2, 930.3 and 930.4.[16]

Petitioner sought supervisory and/or remedial writs in the Louisiana Supreme

Court and said court denied the application on May 21, 2004.  See **State ex rel. Darnell**

**Lewis v. State of Louisiana**, 874 So.2d 171 (La. May 21, 2004) No. 2003-KH-2630.

(Referencing Fourth Circuit No. 2003-H-1290.)

On March 26, 2003, petitioner filed an application for supervisory and/or

remedial writs in the Louisiana Supreme Court under No. 03-KH-874.[17]  Petitioner argued

the following issues:

---

[15]See State Record, Vol. 5 of 6, for copy of Application, No. 2003-K-1290, La. 4th Cir.
filed July 22, 2003.

[16]See State Record, Vol. 5 of 6, for copy of ruling.  **State v. Lewis**, No. 2003-K-1290 (La.
App. 4th Cir. Aug. 26, 2003).

[17]See State Record, Vol. 6 of 6, for a copy of the application.  **State ex rel. Darnell Lewis
v. N. Burl Cain, Warden,** No. 03-KH-874, (La. Sup. Court).

9

1.    Petitioner was deprived of his right to prove his actual innocence through DNA testing when the trial court denied his post conviction application without consideration of the provisions under La. C.Cr. P. art. 926.1 et seq;

2.    Petitioner was deprived of his constitutional right to a fair trial and due process of law when the prosecution obtained the conviction through the use of false and fabricated evidence;

3.    Defense counsel was constitutionally ineffective for failing to call witnesses for impeachment purposes, including alibi witnesses;

4.    Petitioner is entitled to an evidentiary hearing to present material evidence to establish his actual innocence and claims of ineffective counsel; and,

5.    This Court should reverse the conviction based upon the overwhelming conflicts and contradictions in the record, which cast doubt regarding petitioner's guilt.

Petitioner filed two identical motions for "Leave to File Supplement to Application for Supervisory and/or Remedial Writ" on July 30, 2003, and August 14, 2003.[18] Petitioner claimed that the trial judge and the judge on his PCR application should have recused themselves because of "bias and impartiality."

On May 21, 2004, the Louisiana Supreme Court denied petitioner's application for supervisory writs.[19]

---

[18]See State Record, Vol. 6 of 6, for copies of both motions for Leave to File Supplement to Application for Supervisory and/or Remedial Writ.

[19]**State ex rel. Darnell Lewis v. State of Louisiana**, 874 So.2d 161 (La. 5/21/04) No. 2003-KH-0874. A copy of the ruling is contained in the Federal Record, Vol. 1 of 2 .

Petitioner filed a third application for PCR by way of a Petition for Writ of Habeas Corpus and Application for DNA Testing and Post-Conviction Relief, on December 1, 2003, bringing two claims:  Petitioner is entitled to DNA testing as he has articulable doubt as to the validity of his convictions; and, the state suppressed favorable evidence.[20] The district court denied the petition and the motion on January 28, 2004, in a judgment which stated, in pertinent part:

> Defendant has filed a Petition for Writ of Habeas Corpus and an Application for DNA Testing and Post Conviction Relief.
>
> **DNA Testing**
> Defendant was convicted based on the positive identification of the victim. There is not an articulable doubt about the guilt of the defendant.  La.C.Cr. P. art. 926.1©)(1)
>
> **Suppression of Favorable Evidence**
> As more than 2 years have elapsed since defendant's conviction became final, (November 21, 2001), this claim is untimely.  (Defendant's Post Conviction Application, p.7 (November 28, 2003), La. C.Cr. P. art. 930.8.)
>
> Based on the foregoing, defendant's request for DNA Testing is DISMISSED. Defendant's Post Conviction Claim is untimely and will NOT BE CONSIDERED.  Defendant's Petition for Writ of Habeas Corpus is hereby DENIED.[21]

---

[20]See State Record, Vol. 3 of 6, for copy of Petition for Habeas Corpus and Application for DNA Testing, and Post-Conviction Relief.

[21]See State Record, Vol. 1 of 6, for copy of Judgment dated January 28, 2004.

Petitioner sought review in the Louisiana Court of Appeal, Fourth Circuit, which denied relief on March 22, 2004, finding no error in the judgment of the district court's denial of petitioner's application for post-conviction relief.[22]

### Statement of Fact[23]

At 8:09 P.M. on September 5, 1997, the New Orleans Police Department 911 operator received a report that Gerald Scott had just been robbed at a Citgo gas station/convenience store at the corner of Chef Menteur Highway and Dale Street. The tape of that call contains three voices, identified at trial as that of Mr. Scott, his niece, Dionne Scott, who was the cashier on duty at the time, and Michelle Brown, who was working as a cook at the store. The perpetrator was described as a light-complected black male, 4'8", wearing a white shirt, brown hat and khaki pants. Patrol cars were dispatched immediately, but the operator called back for further information about ten minutes later. This time, it was reported that the robber was a light-complected black male, 20 years old, 5'7", with a gold tooth, and wearing a multi-colored shirt, khaki pants and a tan hat, last seen westbound on Chef with a cellular phone and a .38 black-steel-type weapon. A search of the area, however,

---

[22]See State Record, Vol. 1 of 6, for copy of ruling. **State v. Lewis**, No. 2004-K-0238 (La. App. 4th Cir. March 22, 2004).

[23]The Statement of Fact was taken from the unpublished opinion in **State v. Darnell Lewis**, No. 99-KA-2891, pages 1-7(La. App. 4th Cir. Oct. 4, 2000) after review of the record for accuracy. (Footnotes omitted.) A copy of the opinion is contained in the State Record, Vol. 1 of 6.

was unsuccessful. The only evidence recovered was a blue bandana that Mr. Scott had pulled from the robber's head.

After an initial report was completed by a patrol officer, the case was assigned to Detective David Patrolia for further investigation. He testified that he spoke to the reporting officer sometime after 10:00 p.m. and was given a physical description that included "smooth" tattooed on the forehead and teardrops on the cheek, gold teeth, and the name "Darnell." With that information, he compiled a photographic lineup that included the defendant, Darnell Lewis, among the possible suspects.

At about 12:30 on the morning of September 6th, Det. Patrolia presented the photo lineup to Mr. Scott at his home. While Mr. Scott was unable to make an identification, he provided "a little more information" about the robbery. Det. Petrolia then went to the Citgo station, just a few blocks from Mr. Scott's house and spoke with Michelle Brown. She was shown the same photographic lineup but did not identify anyone as the robber. After briefly studying the scene of the crime, Det. Petrolia returned to the police station.

Mr. Lewis was arrested the next morning near his residence, which was not far from the Citgo station. When Det. Petrolia was informed that his suspect was in custody, he was also told that there was another witness he should talk to, Dionne Scott. Det. Petrolia interviewed Ms. Scott late in the morning of September 6th and showed her the same lineup

he had assembled the night before.  She selected the defendant's photo, and stated that his full name was Darnell Lewis.

At trial, Det. Petrolia explained that after his initial interview with Ms. Scott, he thought that she had witnessed the struggle between her uncle and Mr. Lewis from across the street, about thirty-to-forty- feet away.  Therefore, he had testified to this effect at a pretrial hearing in December 1997.  After Ms. Scott's pretrial testimony was presented in March 1998, however, he learned that she was in the store and had not seen any confrontation after all.  Det. Petrolia further admitted at trial that he had mistakenly testified at the hearing that Ms. Scott and Mr. Lewis had dated in the past; he testified that he assumed there had been a relationship between them because she said she had known Mr. Lewis all her life.

Dionne Scott testified, both at a pretrial hearing and before the jury, that she and Michelle Brown were inside the Citgo station when they saw Darnell Lewis, wearing a tee shirt, brown pants, and a blue bandana on his head, walking towards the store.  Ms. Scott turned to speak to Ms. Brown, and when she looked back outside Mr. Lewis was gone.  Suddenly, people were yelling that there had been a robbery and she should call the police.  A little bit later, she learned that the robbery victim was her uncle, Gerald Scott, and that he said the perpetrator was the boy she knew who had been wearing the blue bandana.  It was

not until after the police had gone that she told Mr. Scott that the boy wearing the bandanna was named Darnell Lewis.

Ms. Scott denied that she had ever dated Darnell Lewis, testifying that the only "relationship" she had with him was talking on the phone when he would call from jail several years ago. She could not explain why Det. Petrolia thought she had been across the street when the robbery occurred, or why he believed she had seen her uncle struggling with the robber. Ms. Scott emphasized that she had never claimed to have seen Darnell Lewis commit the robbery, but only identified his picture as the person wearing the blue bandanna just minutes before her uncle was robbed. While she denied being pressured or intimidated when the photo lineup was presented, she admitted that the judge had previously warned her that she could go to jail if she did not come to court when she was supposed to.

Aaron Fisher testified that he was at the Citgo station that evening when Gerald Scott pulled up to the gas pumps. He went over and spoke briefly with Mr. Scott and another man, then went into the convenience store to get change as Mr. Scott began pumping gas and the third man walked off. Just moments later, as Mr. Fisher used the pay phone outside, he saw Darnell Lewis standing next to Mr. Scott, pointing a gun at his side. Mr. Fisher heard the gun click about six times before Mr. Lewis cursed and ran off. When Mr. Scott yelled that he had been robbed, Mr. Fisher ran behind Mr. Lewis to see which way he went, but lost him in a crowd of people across the street.

Mr. Fisher stated that when the police arrived at the gas station, "everybody gave the description and we immediately knew who it was anyway" because Mr. Lewis lived in the neighborhood.  Mr. Fisher told one of the policemen that he was an eyewitness, but the officer just took his name, phone number and address and said someone would get back to him.  No one did, so the next morning he went to the police station "because it was the right thing to do."  Mr. Fisher talked to a detective who wrote down what he said, but his statement was not recorded or signed.

The owner of the gas station, Fathe Mohammed Hhatbi, testified that Darnell Lewis, a regular customer, had been inside the store talking to Michelle Brown that night; he thought it was just before the robbery but he could not be sure of the time.  However, Mr. Khatbi did not see the actual robbery because he was in the back filling the cooler.  He confirmed that Dionne Scott was the cashier on duty that night and that she could not have been outside at the time of the incident.  However, Michelle Brown was no longer his employee and could not be found to testify at trial.

Gerald Scott testified that he had just finished pumping gas and was joking with some acquaintances about a party at his house when the robber put a gun to his head and told him it was robbery.  At first, he thought it was a joke related to the prior exchange with his friends, but the perpetrator said, "I'm serious.  You're being robbed, fool." and pulled the trigger several times.  When the gun did not fire, the robber kept pulling the trigger while the

gun was being pointed in different directions. The perpetrator grabbed Mr. Scott's cell phone as Mr. Scott began to struggle for the gun. The robber then ran off, but Mr. Scott was able to pull the blue bandanna from the robber's forehead.

Mr. Scott further testified that he immediately recognized the robber from the neighborhood by his teardrop tattoos and the gold in his teeth, but did not know the robber's name. While he remembered the 911 call and someone asking him for a description, he could not remember what he said because everything was happening so fast. After Mr. Scott told the patrol officer about the teardrops and the gold teeth, someone drove him home and he got drunk. By the time the detective showed him the photographs in his poorly lit living room, Mr. Scott was unable to identify anyone in the pictures. Although he went to the police station the next morning with his brother and a friend, Aaron Fisher, he was not shown the photos again. At trial, however, Mr. Scott was certain that Darnell Lewis was the man who had robbed him.

On cross examination, Mr. Scott testified that he did not remember telling the 911 operator the robber was "very short," and could not remember describing any clothing during the phone call. While acknowledging his voice on the 911 tape, he emphasized that he had not even realized he was holding the robber's blue bandanna in his hand until a patrol officer asked him about it. Mr. Scott, who works at the Lighthouse for the Blind, denied telling anyone he could not identify the robber because he was not wearing his glasses.

Darnell Lewis testified that he spent the evening of September 5, 1997, at home with his girlfriend, and pointed her out in the courtroom. At about 10:30 p.m., Dionne Scott phoned and asked if he knew who had robbed her uncle, because it looked like one of his friends. Mr. Lewis said Ms. Scott started to fuss when he denied knowing anything about it, so he hung up on her. She called him right back, but Mr. Lewis recognized her number on the Caller ID so he did not answer the phone. The next morning, the police told him he was only a suspect and would be released if no one identified him, so he was surprised to learn that he was charged based on Ms. Scott's claim that he had robbed her uncle. Mr. Lewis testified that although he knows the witnesses against him all do drugs, he cannot explain why Mr. Scott and Mr. Fisher would lie to convict him rather than the actual criminal.

Mr. Lewis, who gave his height as 5'8", admitted that he was institutionalized in a juvenile facility until 1991, and then was imprisoned from November 1992 to May 1996, for aggravated burglary. His relationship with Dionne Scott began during the latter term when he would phone her and send greeting cards. After his release, they dated for several months and had a sexual relationship, but Mr. Lewis stated that Ms. Scott was now "fooling around" with Aaron Fisher.

The defense then recalled Ms. Scott, who denied phoning Mr. Lewis the night of the robbery or even knowing his phone number. She reiterated that he had not entered the

18

store while she was there that evening, and that he could not have come in unnoticed while she was on duty. Ms. Scott admitted that Mr. Lewis had visited her once shortly after his release from jail, but emphatically denied that any romantic and/or physical relationship had ever existed between them.

Based upon this testimony and the evidence presented, the jury found Mr. Lewis guilty of armed robbery and attempted second degree murder.

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including Title 28, United States Code, Section 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.[24]

---

[24] Section 2254(d) provides in full:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

State court determinations of questions of law and mixed questions of law and fact are reviewed under Title 28, United States Code, Section 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." **Hill v. Johnson**, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has recently advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

**Williams v. Taylor**, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); **Hill**, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Hill**, 210 F.3d at 485, *quoting* Title 28, United States Code, Section 2254(d)(2).

### Evidentiary Hearing

Petitioner claims that he is entitled to a federal evidentiary hearing to develop the factual basis of his claims because the state failed to give petitioner a full and fair evidentiary hearing in the state court proceedings, and thus denied him due process of law

20

under the Fourteenth Amendment to the U.S. Constitution.  Specifically, petitioner claims actual innocence because of alibi.  He claims at the time of the crimes that he was miles away from the scene in the Plaza Shopping Center.  Petitioner offers the following in support of his claim:

(1) Affidavits of three alibi witnesses (Daniesha Lewis, Chernitee Burks and Lyn Burks.  Each affidavit was dated in October 2002.)[25]  Petitioner claims that the witnesses would have established his innocence because he was in their presence and also was in the presence of two police officers at the time the crimes took place.

(2) The March 6, 2003, affidavit of one Michelle Brown, wherein she stated that had she been called to testify at petitioner's trial, that her testimony would have exonerated petitioner.[26]

(3) Petitioner requested and was denied DNA testing of a blue bandanna for hair and skin tissue.  The victim allegedly "snatched" the bandanna from the head of the perpetrator.

(4) Petitioner claims that he can establish that the victim and a police officer planted the bandanna and fabricated the evidence relative to petitioner's involvement.

---

[25]See Fed. Record, Vol. 1, Doc. No. 2, Petition, Attached Affidavits, pages 133-138.

[26]**Ibid**, pages 139-140.

(5) Petitioner also claims the police reports would establish that the police officers,

the prosecutor, and the state witnesses "colluded together" to convict an innocent man by the

use of false and fabricated evidence.[27]

Petitioner cites **Clark v. Johnson**, 202 F.3d 760, 765 (5th Cir. 2000) as

authority that the district court has discretion to grant an evidentiary hearing pursuant to Title

28, United States Code, Section 2254(e)(2).[28]  In **Clark v. Johnson**, the Fifth Circuit said:

---

[27]See Fed. Record, Doc. No. 2, Memorandum in Support of Petition for Writ of Habeas Corpus, page 12.  On May 16, 2005, petitioner mailed a letter requesting an evidentiary hearing to receive the alibi testimony of police officers Roy Phillips and Joey Williams.  Petitioner claims that he was in the officers' custody at the time of the charged offenses.  No affidavit from either of the officers has been submitted.  However, the record shows that both officers were known to petitioner and his counsel in December of 1977.  State Record, Vol. 1 of 6, Defense Witness List.  The document submitted by petitioner is misleading as the signature of his attorney has been omitted/redacted.  He also submitted an affidavit dated February 21, 2005, from Michelle Brown who said "she received a police report from Darnell Lewis and was shocked to read my name in it, stating that I witnessed Darnell Lewis holding a hand gun on the victim, which happens to be a "lie" by Officer Neyrey."  Petitioner also submitted an affidavit from one Dayna Marrero dated February 10, 2005, wherein Marrero claims that Aaron Fisher's testimony was based upon lies because Fisher was with Marrero at the time Gerald Scott was robbed.  It appears that the above information (factual predicate) could have been previously discovered by petitioner through the exercise of due diligence.  Moreover, the facts underlying the claim would not be sufficient to establish that but for constitutional error, no reasonable fact-finder would have found the petitioner guilty as the victim also positively identified Lewis as the perpetrator.  (See Title 28, United States Code, Section 2254(e)(2) which text is contained in footnote No. 28 of this report.)  Thus, petitioner is not entitled to a federal evidentiary hearing.

[28]Title 28, United States Code, Section 2254(e)(2) provides:
(2) If the applicant has failed to develop the factual basis  of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
(A) the claims relies on -
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> Relying on **McDonald**, Clark argues that § 2254(e)(2) does not apply to preclude an evidentiary hearing here because the failure to fully develop the record below is not attributable to any fault of his own, but rather to the state court's failure to permit him additional discovery. While we agree that § 2254(e)(2) does not apply to Clark's situation, as we stated in **McDonald**, overcoming the preclusive effect of § 2254(e)(2) does not *guarantee* an evidentiary hearing, it only opens the door for one. *See* **McDonald**, 139 F.3d at 1059-60. Pursuant to Rule 8 of the Rules Governing § 2254 Cases, the district court retains discretion over the decision to grant an evidentiary hearing once a petitioner overcomes the barriers presented by § 2254(e)(2). *See* **id**. at 1060. The district court's decision to deny Clark's request for an evidentiary hearing will thus be reviewed by us on appeal for an abuse of discretion. *See* **id**.
>
> . . .

See **Clark v. Johnson**, 202 F.3d at 765.

Further review of **Clark v. Johnson** shows that the state court did not give Clark a live evidentiary hearing but conducted a paper hearing. It was shown that a full and fair hearing does not necessarily require live testimony. After review of the record, the Fifth Circuit determined that Clark had been provided a full and fair hearing. The Fifth Circuit also decided that the district court did not abuse its discretion in denying Clark discovery and an evidentiary hearing. It was further determined that Clark alleged no fact which if proved would entitle him to relief on his habeas claims. ( See **Clark v. Johnson**, 202 F.3d at 766.)

---

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and,
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

23

In this case, Lewis was not given a live evidentiary hearing. Review of the state court record shows that the trial court reviewed Lewis' petition, the record and the applicable law prior to denying Lewis' claims. Thus, it appears that a paper hearing was conducted. Additionally, Lewis' issues were evaluated and ruled upon by the Louisiana Court of Appeal, Fourth Circuit, and the Louisiana Supreme Court. (See this Report pages 7-11.) Thus, it cannot be said that Lewis was denied a full and fair hearing. This claim is meritless. Moreover, the court notes that petitioner was not granted a full-blown evidentiary hearing on his DNA issue because the state court found that petitioner's claim was deficient and failed to satisfy the procedural requirements of La. C.Cr. P. art. 926.1. He also was not given a evidentiary hearing by the state courts on his claim that there were alibi witnesses or witnesses that could "exonerate" him. Again, petitioner failed to satisfy the state procedural rules (i.e., timeliness) for bringing such claims. To the extent petitioner is claiming that the state courts erred in applying its own law, such a claim is not cognizable on federal review. See **Estelle v. McGuire**, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed2d 385 (1991).

### **Perjured Testimony**

Petitioner claims that his constitutional rights to due process of law and to a fair trial were violated by the State's knowing use of false and fabricated evidence. Specifically, petitioner claims that:

> "The allegations made by the state witnesses were so bizarre as
> to defy the integrity of the administration of criminal justice.

24

> Petitioner was accused of attempting to kill and rob Gerald Scott who has known the petitioner for about ten years. However, petitioner insists that Mr. Scott did not know his assailant. The victim's own testimony shows that a Melvin Robinson was more likely the actual perpetrator."[29]

The Supreme Court has held that a state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. **Napue v. Illinois,** 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); **Mooney v. Holohan,** 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, (1935); **Faulder v. Johnson,** 81 F.3d 515, 519 (5th Cir.), cert. denied, 519 U.S. 995, 117 S. Ct. 487, 136 L.Ed.2d 380 (1996). False testimony for these purposes includes testimony that affects the credibility of a witness. **Napue,** 79 S.Ct. at 1177; **United States v. O'Keefe,** 128 F.3d 885, 893 (5th Cir. 1997). Granting a new trial on the basis of a **Napue** violation is only proper if (1) the statements in question are shown to be actually false; (2) the prosecution knew that they were false; and, (3) the statements were material. **O'Keefe**, 128 F.3d at 893-894; **Faulder**, 81 F.3d at 519; **Pyles v. Johnson,** 136 F.3d 986, 996, (5th Cir.), cert. denied, 524 U.S. 2338, 118 S.Ct. 2338, 141 L.Ed.2d 707 (1998).

As to the materiality standard, in **Kyles v. Whitley,** 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995), the Supreme Court defined materiality in terms

---

[29]See Fed. Record, Vol. 1, Doc. No. 2, page 13, Memorandum in Support of Petition for Writ of Habeas Corpus. (The memorandum consisted of 44 pages.)

of a "reasonable probability" of a different outcome. **Kyles,** 115 S.Ct. at 1566.  Such

reasonable probability results when nondisclosure places the case in a different light so as

to undermine confidence in the verdict. **Id**; see also **O'Keefe**, 128 F.3d at 894.  The relevant

inquiry examines the challenged evidence collectively, not on an item by item basis.  The

conclusion that an error did not contribute to the verdict is tantamount to a finding that the

error is unimportant in relation to everything else that the jury considered on the issue in

question as revealed by the record. **O'Keefe,** 128 F.3d at 894.  The Fifth Circuit explained:

> It is axiomatic that not every lie is material.  Along with other circuits, we have limited material lies to those that occur as a part of the prosecution's case.  The prosecution has a duty only to refrain from knowingly presenting perjured testimony and from knowingly failing to disclose that testimony used to convict a defendant was false.

**O'Keefe,** 128 F.3d at 894 (internal quotations and citations omitted).

Respondent argues that the petitioner has failed to establish that the prosecution

knowingly presented false testimony in order to obtain petitioner's convictions.  Petitioner

has focused his claim upon what he suggests to be inconsistencies and false testimony of

Gerald Scott, Detective David Patrolia and Aaron Fisher.  Petitioner also complains that the

prosecution failed to call Michelle Brown to testify at his trial.  He now claims that Michelle

Brown would have given testimony exonerating him.

Further review of petitioner's memorandum shows that he directs the court's attention to the time when the blue bandanna was given to the police officer and the discrepancies in the physical description of the perpetrator provided by witnesses.

Petitioner identifies several instances where witnesses allegedly rendered perjurous testimony:[30]

> (1) Gerald Scott's initial description of the perpetrator as one Melvin Robinson (T. 107-108) conflicts with Scott's in-court positive identification of petitioner as the perpetrator of the offenses. (T. 113-114.)
>
> Gerald Scott testified that he gave the blue bandanna, which he took from the perpetrator during their struggle, to a police officer at 8:10 at the scene. Petitioner claims that the testimony conflicts with the report of Officer James Neyrey, who was the first officer on the scene, which indicated that he received the bandanna at 8:45 p.m. from Scott while Scott was at home. Officer Neyrey's report indicated that the perpetrator was a black male, with gold teeth, 5 feet 4 inches tall, medium build with short black hair. Moreover, petitioner argues that he is a light skinned black male, thin physique, weighing 120 pounds, having brown eyes, long braided brown hair, with a tattoo of "too smooth" on his forehead and teardrops on his cheek, and has 2 gold teeth.
>
> (2) Dionne Scott was allegedly coached by the prosecutor regarding her testimony concerning the clothing worn by the perpetrator. Ms. Scott did not see the robbery however, she saw Darnell Lewis  walking toward the store and she heard people yelling to call the police. She next saw her uncle Gerald Scott who told her that he had been robbed and to call the police (T.

---

[30]See State Record, Vol. 4 of 6, for the trial transcript, hereinafter referred to as T. _____.

27

50-51). Lewis was wearing a t-shirt, a bandanna covering up a tattoo on his forehead which read "too smooth." (T. 51.) Dionne Scott did not see any confrontation between Darnell Lewis and her uncle Gerald Scott. (T. 52; 75.) Ms. Scott did not know who had committed the robbery until her uncle told her that the boy with the bandanna did it. (T. 53.) Dionne Scott denied telling police officers that she was standing 30 to 40 feet away, across the street in the parking lot from the Food Store. (T. 55-56; 61-62.)

(3) Detective David Patrolia conducted the follow-up investigation in this case (T. 23) and gathered a description of the perpetrator from the reporting officer. He received the name Darnell, who was described as having a tattoo of "smooth" on the forehead, tear drops on the cheek and gold teeth. Darnell Lewis was developed as a suspect and a photographic line-up was conducted. (T. 24.) Detective Patrolia interviewed the victim, Gerald Scott, at his home at about 12:30 a.m., but Scott made no identification at the time. (T. 25.) The only other person interviewed that night was Michelle Brown who was not able to make an identification of the perpetrator. (T. 25-26.) Detective Patrolia talked to Dionne Scott, on another day and she identified Darnell Lewis out of the line-up as being the person fitting the description of the perpetrator. (T. 26.)

(4) Aaron Fisher was an eye witness to the offenses. Petitioner argues that Fisher was an imposter witness who was "planted" on the scene by the state.

(5) Michelle Brown did not testify at petitioner's trial. Petitioner argues her testimony would have supported his defense.

Respondent correctly argues that petitioner's focus on the time when the blue bandanna was provided to officers and upon the discrepancies in the physical descriptions of the perpetrator as provided by witnesses failed to establish that the testimony was false.

Petitioner failed to prove that the prosecutors knew that the witnesses' testimonies were allegedly false. The jury heard the testimony during the trial which was subjected to cross-examination. Again, petitioner failed to prove that the testimony and physical descriptions of the perpetrator of the crimes charged are false. The jury heard the evidence and made decisions on the credibility of the witnesses.

Moreover, petitioner has not produced any evidence which shows/proves that eyewitness Aaron Fisher's testimony was false. Petitioner points to some contradiction of Fisher regarding information written by Officer Petrolia. Said information is not material and had it been introduced into evidence, it would not have altered the jury's verdict.

The petitioner's argument concerning the proposed testimony of Michelle Brown lacks merit. Respondent correctly points out that this claim was rejected by the state courts. The state district court opined that Ms. Brown resided in New Orleans at the time of trial. Moreover, her testimony was not newly discovered evidence that could not have been discovered with due diligence.[31] The Louisiana Court of Appeal, Fourth Circuit, denied relief on the claim based upon La. Cr. P. arts. 930.2, 930.3, and 930.4.[32] The Louisiana Supreme Court denied relief on May 21, 2004, without an opinion.[33]

---

[31]See footnote No. 14 of this Report at page 8.

[32]See page 9 of this Report.

[33]**Ibid**.

29

Respondent argues that the claim regarding Michelle Brown is immune from federal review as procedurally defaulted. Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claims and adequate to support that judgment. **Amos v. Scott**, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), citing **Harris v. Reed**, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. **Amos**, 61 F.3d at 338. (citations omitted). As explained in **Coleman v. Thompson**, 501 U.S. 722, 730-31, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991): "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity.... Without the rule, ... habeas would offer state prisoners whose custody was supported by independent and adequate state grounds ... means to undermine the State's interest in enforcing its laws."

State procedural rules are presumed to be adequate when the state court expressly relies on them in declining review of a claim. **Glover v. Cain,** 128 F.3d 900, 902 (5th Cir. 1997), cert. denied, 523 U.S. 1125, 118 S.Ct. 1811, 140 L.Ed. 949 (1998). Also see **Duncan v. Cain**, 278 F.3d 537 (5th Cir. 2002). Moreover, review of Louisiana jurisprudence

establishes that the Louisiana Courts regularly invoke the statutory procedural bar imposed under La. C. Cr. P. art. 930.3.  Accordingly, petitioner's claim is meritless.

Petitioner does not offer nor does the record support any showing of "cause for the default" or "prejudice attributed thereto" so as to excuse his procedural default.  **Amos,** 61 F3d at 339.

### Ineffective Assistance of Counsel

Petitioner claims that his trial counsel provided ineffective assistance which violated his Sixth Amendment right to effective assistance of counsel.  Specifically, petitioner argues that his counsel failed to call alibi witnesses, failed to locate and subpoena Michelle Brown as a witness, failed to subpoena Officer James Neyrey to testify and failed to move for a continuance of trial to investigate the State's surprise witness, Aaron Fisher.

In **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A convicted defendant seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  See **Strickland**, 466 U.S. at 697, 104 S.Ct. at 2069.  If this Court finds that petitioner has made an insufficient showing as to either of these two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  **Id.**

Petitioner carries the burden of proof and must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985). Under the deficient performance prong of the Strickland test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371, 113 S. Ct. 838, 844, 122 L. Ed. 2d 180 (1993) (quoting Strickland, 466 U.S. at 690, 104 S.Ct. at 2066). "An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." United States v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995). Petitioner must prove that the conduct of counsel fell below the constitutional minimum guaranteed by the Sixth Amendment. See Styron, 262 F.3d at 450. Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002), cert. denied, 538 U.S. 969, 123 S.Ct. 1768, 155 L.Ed.2d 526 (2003). Review of the record shows that petitioner's claim that his counsel was ineffective because he failed to call alibi witnesses who would have testified that petitioner was at a shopping center at the time of the charged offense is unsupported. Petitioner's trial testimony is demonstrative of the lack of merit of his claim as follows:

32

**Q.** Now, I'm going to take you back to September 5th, 1997, at approximately 8:00 o'clock. Where were you at the time, if you remember.

**A.** I was at my house.

**Q.** At your house? Okay. Now, do you know a person by the name of Dione Scott?

**A.** Yes, Sir.

. . . .

(See State Record, Vol. 4 of 6, Transcript of Trial, page 127.)

Therefore, petitioner's purported testimony of suggested alibi witnesses who would have testified that petitioner was at a shopping center miles away from the scene during the time of the offenses is not credible, as it directly conflicts with petitioner's own trial testimony. Moreover, it cannot be concluded that trial counsel was ineffective because he failed to call the alibi witnesses.

Petitioner's counsel's failure to call Michelle Brown to testify at trial did not amount to ineffective assistance of counsel. The state court record shows that Michelle Brown was unable to identify petitioner as the perpetrator during a photographic line-up. (See trial testimony of Detective Patrolia, T. 25-26). The lack of Michelle Brown's testimony does not undermine confidence in the verdict as the victim and at least one eye witness, Aaron Fischer, identified Lewis as the perpetrator. Counsel was not ineffective in failing to subpoena her for trial.

The failure of petitioner's counsel to subpoena Officer James Neyrey does not amount to ineffective assistance of counsel.  The time Officer Neyrey received the blue bandanna from Gerald Scott does not impact the confidence in the jury's verdict.  Gerald Scott testified that he tried to grab the gun from petitioner but grabbed the bandanna from his head during a struggle for the gun.  (T. 109-110.)  Scott testified that he did not realized that he still had the bandanna until the police came.  Scott did not say what time he gave the bandanna to the officer.  The failure of petitioner's counsel to question Gerald Scott about the time he gave the bandanna to the officer does not amount to ineffective assistance of counsel.

Turning to petitioner's claim that his counsel was ineffective because he failed to move to continue the trial after the state's surprise witness, Aaron Fisher, was called to testify is unfounded and not supported by the record.  Review of petitioner's Memorandum in Support of Petition, shows that his counsel moved for a continuance.  However, the court denied the motion.  (See Fed. Record, Doc. 1, Memorandum in Support of Petition, page 31 and attached page 132, Argument III of Motion for New Trial.)

Petitioner's claims that he was unconstitutionally denied effective assistance of counsel are meritless.

34

## Insufficient Evidence Regarding
## Petitioner's Identity Resulting in Misidentification

Petitioner claims that his due process rights as provided by the Fourteenth Amendment, were violated when the State convicted him based on evidence which was insufficient to establish, beyond a reasonable doubt that he was the perpetrator of the charged offenses and that the State failed to negate the reasonable probability of misidentification.[34] Specifically, petitioner claims that the following occurrences at trial prejudiced him: the conflicting versions about the bandanna and hat worn by perpetrator; the bandanna was planted by Gerald Scott and the police; the statements of Dionne Scott and Gerald Scott referring to the perpetrator as "Darnell" and "the boy with the bandanna" were fabrications; Dionne Scott did not witness any crime, but she was forced to testify; and, conflicting descriptions of the suspect. (Most of these claims were discussed in the report on pages 26-29.)

The Supreme Court clearly established the federal law as to sufficiency of evidence claims made in petitions for habeas relief in **Jackson v. Virginia**, 443 U.S. 307. 319, 99 S.Ct. 2781, 61 L.Ed2d 560 (1976). The **Jackson** test requires a reviewing court to find that no rational trier of fact, after viewing the record in the light most favorable to the prosecution, could have found all the elements of the crime proved beyond a reasonable

---

[34]See Fed. Record, Vol. 2, Doc. No. 13, Amended Petition for Writ of Habeas Corpus, page 3, Supplemental Claim.

doubt.  **Id.**, at 319.  In applying the **Jackson** test, the U.S. Fifth Circuit has instructed a

reviewing court to examine "the substantive elements of the criminal offense as defined by

state law." **Dupuy v. Cain**, 201 F.3d 582, 589 (5th Cir. 2000).  La. R.S. 14:64 defines armed

robbery in pertinent part:

> **A.  Armed robbery** is the taking of anything of value belonging to another
> from the person of another or that is in the immediate control of another, by
> use of force or intimidation, while armed with a dangerous weapon.

> La. R.S. 14:30.1 provides, in pertinent part:

>   A.    Second degree murder is the killing of a human being:

>   (1) When the offender has a specific intent to kill or to inflict great bodily
> harm; or

>   (2) When the offender is engaged  in the perpetration or attempted
> perpetration of aggravated rape, forcible rape, aggravated arson, aggravated
> burglary, aggravated kidnapping, aggravated escape, drive-by shooting, armed
> robbery, first degree robbery, or simple robbery, even though he has no intent
> to kill or to inflict great bodily harm.

>                     . . .

> La. R.S. 14:27 defines an attempt, in pertinent part:

>    A.  Any person who, having a specific intent to commit a crime, does or
> omits an act for the purpose of and tending directly toward the accomplishing
> of his object is guilty of an attempt to commit the offense intended; and it shall
> be immaterial whether, under the circumstances, he would have actually
> accomplished his purpose.

>    B.  Mere preparation to commit a crime shall not be sufficient to constitute
> an attempt; but lying in wait with a dangerous weapon with the intent to
> commit a crime, or searching for the intended victim with a dangerous weapon

with the intent to commit a crime, shall be sufficient to constitute an attempt
to commit the offense intended.

. . .

In **Neil v. Biggers**, 409 U.S. 188, 199-00, 93 S.Ct. 375, 382 (1972), the
Supreme Court set out a number of factors that can be analyzed to determine whether an
identification is reliable: (1) The opportunity of the witness to view the criminal during a
crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior
description of the criminal; (4) the witness's level of certainty; and, (5) the length of time
between the crime and the confrontation.

Review of petitioner's claim shows that he does not contest that the crimes
charged[35] were committed by someone. Petitioner claims that he did not commit the crimes
and that he was misidentified as the perpetrator of the charged offenses.

The Louisiana Court of Appeal, Fourth Circuit, specifically addressed the
sufficiency of the evidence issue in accordance with the applicable federal and state law and
denied relief. Lewis must therefore, prove that the state appellate court "unreasonably
applied" the **Jackson** test in its review of his convictions. The Statement of Fact section of
this report is adopted and incorporated in this section of this report, as though it was fully set
out here.

---

[35]The bill of information charged petitioner with one count of armed robbery with a gun
of Gerald Scott of a cell phone and one count of attempted second degree murder of Gerald
Scott. (See State Rec., Vol. 1 of 6.)

The Louisiana Fourth Circuit said, in pertinent part:

Mr. Lewis first argues that the evidence adduced at trial is insufficient to sustain the verdicts.

The standard of appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia,** 443 U.S. 307, 99 S.Ct. 2781 (1979). The reviewing court is to consider the record as a whole, not just the evidence favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict will be upheld. **State v. Mussall,** 523 So.2d 1305, 1310 (La. 1988).

. . .

Credibility determinations are within the discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessel, 450 So.2d 938, 943 (La. 1984). Additionally, when a key issue is whether the defendant was the perpetrator of the crime, the State must negate any reasonable probability of misidentification in order to prove guilt beyond a reasonable doubt. **State v. Smith,** 430 So.2d 31, 45 (La. 1983); **State v. Brown,** 97-2260, p. 6 (La. App.4th Cir. 10/6/99), 746 So.2d 643, 647.

(See State v. Darnell Lewis, No. 99-KA-2891, pages 7-8 (La. App.4th Cir. Oct. 4, 2000) unpublished opinion. A copy of the unpublished opinion is contained in the State Record, Vol. 1 of 6.)

The Louisiana Fourth Circuit evaluated petitioner's claim that the State's witnesses' (Dionne Scott, Detective Patrolia and Aaron Fisher) testimonies were too confusing and conflicting to exclude the hypothesis that petitioner was falsely accused. After a detailed review, the court concluded that the jury's decision to credit Dionne Scott's

38

testimony was supported by the evidence and could not be disturbed and that Detective

Patrolia's explanation of his mistaken testimony was based upon his erroneous recollection

of the initial interview with Dionne Scott.

Moreover, the Court said:

... More significantly, the evidence clearly establishes that within two hours of the robbery, before Det. Patrolia spoke to Ms. Scott the next morning, the police had been informed that the robber had tattoos of "smooth" and teardrops on his face, gold teeth, and was known as "Darnell." Thus, although Mr. Scott was unable to identify Mr. Lewis in the photographic lineup a few hours later, the testimony indicates that just after the crime, the victim and eyewitnesses had described distinguishing characteristics that matched the person the jury saw in the courtroom. These identifications were corroborated in court by both Mr. Scott and Mr. Fisher, who testified that they were positive Mr. Lewis was the man who had committed the robbery.

Accordingly, the evidence fails to support Mr. Lewis' arguments regarding contradictory descriptions by the witnesses. Instead, when viewed in the light most favorable to the prosecution, the record fully supports the jury's determination that Darnell Lewis was guilty of the crimes charged beyond a reasonable doubt.

(See State v. Darnell Lewis, No. 99-KA-2891, page 10 (La. App. 4th Cir. Oct. 4, 2000) unpublished opinion.) (See State Record, Vol. 1 of 6.)

This Court finds that the above reasoning does not represent an unreasonable

application of applicable Supreme Court law, i.e., **Jackson v. Virginia** and **Neil v. Biggers**,

to the facts of this case. The jury heard the evidence and was instructed relative to the

applicable law and made credibility determinations. A reviewing habeas court does not

revisit determinations of credibility for such determinations are properly the province of the jury. **Pemberton v. Collins,** 991 F.2d 1218, 1225 (5th Cir. 1993), cert. denied, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993).  The jury had sufficient evidence presented to it to decide that petitioner was guilty of armed robbery and of attempted second degree murder as charged in the bill of information.  Having concluded that the state court reasonably applied **Jackson v. Virginia** when it assessed petitioner's sufficiency of evidence claim, this Court finds petitioner's claim is meritless.

## RECOMMENDATION

For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that Darnell Lewis' petition for issuance of a writ of habeas corpus pursuant to Title 28, United States Code, Section 2254 be **DENIED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. **Douglass v. United Services Auto. Ass'n**, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____ 1st _____ day of _____ June _____, 2005.

LOUIS MOORE, JR.
United States Magistrate Judge